# RICHARD BENNETT, JR., ADMINISTRATOR (ESTATE OF RICHARD BENNETT, SR.) *v.* NEW MILFORD HOSPITAL, INC., ET AL.
## (SC 18502)

Rogers, C. J., and Norcott, Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

1

Argued October 26, 2010—officially released January 5, 2011*

---

\* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Andrew J. Pianka*, for the appellant (plaintiff).

*Bruce F. Gilpatrick*, with whom, on the brief, was *Matthew M. Sconziano*, for the appellees (defendants).

*Joram Hirsch* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Daniel E. Ryan III* and *Ilyssa H. Kelson* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Nancy P. Tyler, Michael G. Rigg, Stephen V. Manning* and *Rebecca M. Harris* filed a brief for the Connecticut Society for Healthcare Risk Management as amicus curiae.

*Opinion*

NORCOTT, J. In this certified appeal, we consider two significant issues that have arisen under General Statutes (Rev. to 2005) § 52-190a, as amended by Public Acts 2005, No. 05-275, § 2 (P.A. 05-275),[1] namely: (1)

[1] General Statutes (Rev. to 2005) § 52-190a, as amended by P.A. 05-275, § 2, provides: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attor-

whether a surgeon, who likely would be qualified to testify as an expert witness at the trial of a medical malpractice action against a specialist physician pursuant to subsection (d) of General Statutes § 52-184c,[2] but who is not a " 'similar health care provider' " as that

ney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

"(b) Upon petition to the clerk of the court where the action will be filed, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

We note that the current revision of § 52-190a also includes certain technical changes enacted into law in 2007 through Public Acts 2007, No. 07-61, § 1. Herinafter, references to § 52-190a are to the 2005 revision, as amended by P.A. 05-275, § 2.

[2] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b,

term is defined by subsection (c) of that statute, may provide the prelitigation opinion letter (opinion letter) that must accompany the certificate of good faith attached to a medical malpractice complaint pursuant to § 52-190a (a); and (2) whether § 52-190a (c) requires the trial court to dismiss a medical malpractice action if the opinion letter fails to comply with § 52-190a (a). The plaintiff, Richard Bennett, Jr., administrator of the estate of the decedent, Richard Bennett, Sr., appeals,

the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

upon our grant of his petition for certification,[3] from the judgment of the Appellate Court affirming the judgment of the trial court dismissing in part his medical malpractice action against the defendant Frederick Lohse, a physician (defendant), and the named defendant, New Milford Hospital, Inc. (hospital).[4] *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 537, 979 A.2d 1066 (2009). Because the plaintiff brought this action against the defendant in his capacity as a specialist in emergency medicine, we conclude that § 52-190a (a) required the plaintiff to supply an opinion letter authored by a similar health care provider as defined by § 52-184c (c). As a consequence of the plaintiff's failure to provide such an opinion letter, we conclude that the trial court, therefore, was required to dismiss this action pursuant to § 52-190a (c). Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court aptly sets forth the following relevant facts, as alleged in the plaintiff's

---

[3] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's dismissal of the present case for failure to comply with General Statutes § 52-190a?" *Bennett* v. *New Milford Hospital, Inc.*, 294 Conn. 916, 983 A.2d 849 (2009).

[4] The first and second counts of the plaintiff's complaint were directed at the defendant, and the fourth count of the complaint was directed at the hospital on the theory that it is vicariously liable for the defendant's professional negligence. The third count of the complaint is directed solely at the hospital and is founded on the negligence of the hospital's employees other than the defendant. The trial court's judgment of dismissal was limited only to counts one, two and four of the complaint; the third count against the hospital remains pending.

We note that the plaintiff amended his appeal to the Appellate Court to challenge the trial court's dismissal of count four against the hospital. The Appellate Court dismissed that portion of the appeal for lack of a final judgment, given that count three remained pending against the hospital. See *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 353, 540 n.5, 979 A.2d 1066 (2009). Because the plaintiff has not challenged the Appellate Court's dismissal of this portion of the appeal, and the hospital is, therefore, no longer a party to this certified appeal, all references herein to the defendant are to Lohse.

complaint, and procedural history. "On November 28, 2006, the decedent suffered a diabetic seizure while operating his motor vehicle. Consequently, his vehicle left the road and collided with a concrete wall. He was extracted from his vehicle and transported to [the hospital]. He was treated in the emergency department by [the defendant], who stabilized the decedent's blood sugar and medicated him for back pain. He was discharged and advised to follow up with his primary care physician. Thereafter, the decedent's primary care physician directed him to return to the hospital for further testing where it was discovered that the decedent had sustained a compression fracture of his lumbar spine, an impact fracture of the proximal tibia and right knee effusion. As a consequence of the significant pain that he suffered due to the untreated fractures of the spine and leg, the decedent sustained myocardial ischemia, which resulted in his death on January 9, 2007.

"The first two counts of the plaintiff's complaint were against [the defendant], and the remaining two counts were against the hospital. Pursuant to § 52-190a (a), the plaintiff attached a good faith certificate from his attorney and a written opinion from a physician. On March 27, 2008, [the defendant] moved to dismiss counts one and two of the plaintiff's complaint pursuant to § 52-190a (c) on the basis that the plaintiff did not comply with § 52-190a (a). Specifically, [the defendant] claimed that the author of the opinion letter attached to the plaintiff's good faith certificate was not a similar health care provider and that the opinion failed to provide a 'detailed basis' for its formation; see General Statutes [Rev. to 2005] § 52-190a (a) [as amended by P.A. 05-275]; as it failed to refer specifically to [the defendant]. According to the plaintiff's complaint, [the defendant] specializes in emergency medicine.[5] As to

---

[5] "Although the plaintiff's complaint does not indicate whether [the defendant] is board certified, it is undisputed that he is not." *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 539 n.3.

the qualifications of the author of the opinion letter submitted by the plaintiff, the letter stated: 'As a practicing and [b]oard certified [g]eneral [s]urgeon with added qualifications in [s]urgical [c]ritical [c]are, and engaged in the practice of trauma surgery, I believe that I am qualified to review the contents of these records for adherence to the existing standard of care. One should note that I regularly evaluate and treat injured patients in the [e]mergency [d]epartment including those who are discharged from the [emergency department] as well as those who require inpatient care. The overwhelming majority of my time at work is spent providing clinical care in the [emergency department], general ward, intensive care unit and operating room over the last [twelve] years.'[6] [The defendant] claimed that the opinion is not from a similar health care provider as defined in . . . § 52-184c because the opinion author is not board certified in emergency medicine and, therefore, fails to comply with the requirements of § 52-

[6] "The plaintiff's attorney filed an affidavit in support of his objection to [the defendant's] motion to dismiss. The affidavit indicated, inter alia, that both [the defendant] and the expert are trained general surgeons. The affidavit further provided that the expert: is board certified by the American Board of Surgery; practices regularly in the emergency room of a level one trauma center; has spent the majority of his time providing clinical care in the emergency department, general ward, intensive care unit and operating room over the past twelve years; teaches as a professor of emergency medicine; has sat on the emergency care committee and the emergency department observation unit steering committee, among many other committees at a university medical school; has been the conference section chairman for the emergency medicine session of an annual international congress of medical syndicate; has taught and developed courses at medical colleges covering various seminars for emergency medicine; has authored educational materials in the area of emergency medical services and coauthored publications published in various medical journals, including the Journal of Emergency Medicine; and has coauthored books and chapters or contributed to publications on the topics of trauma resuscitation, expert rapid response and published on the topic of clinical procedures in emergency medicine, as well as others. It would appear from this recitation that the plaintiff's expert may be qualified to testify at trial as a nonsimilar health care provider pursuant to . . . § 52-184c (d)." *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 540 n.4.

190a (a). On May 5, 2008, the [trial] court granted [the defendant's] motion to dismiss . . . ." *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 538–40.

The plaintiff appealed from the judgment of dismissal to the Appellate Court. In a unanimous opinion, a three judge panel of the Appellate Court first determined that an opinion letter that fails to comply with § 52-190a (a) subjects the action to "potential dismissal" under § 52-190a (c). Id., 545. The Appellate Court then concluded that, under the plain language of §§ 52-190a (a) and 52-184c, "a similar health care provider with respect to [the defendant] would be one who is trained and experienced in emergency medicine and is certified in emergency medicine. Accordingly, before bringing an action alleging medical negligence on [the defendant's] part, the plaintiff or his attorney must obtain and file a written and signed opinion from such a physician that there appears to be evidence of such negligence. Because the plaintiff's expert is not certified in emergency medicine, he does not fall within the statutory definition of a similar health care provider as set forth in § 52-184c (c)."[7] (Internal quotation marks omitted.) Id., 546–47.

---

[7] In so concluding, the Appellate Court rejected the plaintiff's argument that the opinion letter that he had submitted was authored by a physician qualified to testify as an expert regarding the standard of care pursuant to § 52-184c (d), and that "it would be absurd to interpret § 52-190a (a) as setting a higher bar for an expert authoring a prelitigation opinion letter than one who is testifying at trial." *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 548. The court reasoned that "[t]he plain language of [§ 52-190a (a)] . . . belies the plaintiff's policy argument . . . [and] [i]f the legislature intended to include this category of health care providers within the parameters of § 52-190a (a), it easily could have done so . . . [by permitting] opinion letters to be authored by a 'qualified health care provider,' thereby allowing either similar or nonsimilar health care providers to author opinion letters in compliance with § 52-190a (a)." Id. The Appellate Court further emphasized that setting the bar higher for physicians submitting an opinion letter than for those who are testifying "may seem incongruous," but does not lead to an "absurd or unworkable" result because of the discretion afforded to trial courts under § 52-184c (d), while "making the prelitigation requirements more definitive and uniform." Id., 549.

Accordingly, the Appellate Court affirmed the judgment of the trial court dismissing the claims against the defendant. Id., 550; see also footnote 4 of this opinion. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the plaintiff and the amicus curiae Connecticut Trial Lawyers Association (trial lawyers) claim that: (1) to provide the opinion letter required by § 52-190a (a), a health care provider need not be a similar health care provider under § 52-184c (b) or (c) but, rather, must only qualify to testify as an expert witness under § 52-184c (d); (2) § 52-190a (c) did not obligate the trial court to dismiss the case on the basis of the submission of an opinion letter from a physician who was not a similar health care provider; and (3) a construction of § 52-190a to the contrary would violate the separation of powers provision of article second of the Connecticut constitution, as amended by article eighteen of the amendments.[8] The defendant, and the amici curiae Connecticut Defense Lawyers Association (defense lawyers) and Connecticut Society for Healthcare Risk Management (risk management society), contend otherwise.

Before addressing the plaintiff's claims on appeal, we address the applicable standard of review, which is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court

---

[8] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland,* 296 Conn. 186, 200–201, 994 A.2d 106 (2010).

Moreover, when the legal issue presented in connection with a motion to dismiss is one of statutory construction, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission,* 294 Conn. 673, 679, 986 A.2d 290 (2010).

I

We begin with the plaintiff's claim that the Appellate Court improperly concluded that § 52-190a (a) clearly and unambiguously permits only a similar health care

provider, as defined by subsections (b) or (c) of § 52-184c, rather than an otherwise qualified expert under § 52-184c (d), to provide an opinion letter. The plaintiff posits that § 52-190a (a) is ambiguous, but clarified by legislative history that indicates that the legislature contemplated that the same expert witness could and would both author the opinion letter and testify at the subsequent trial. The plaintiff also argues that, by precluding otherwise qualified experts from authoring opinion letters, the Appellate Court's construction of § 52-190a (a) does not further the purpose of the statute, which is to protect health care providers from the filing of frivolous medical malpractice actions.

In response, the defendant contends that the Appellate Court properly concluded that, under § 52-190a (a), the author of the opinion letter had to be a similar health care provider as defined by § 52-184c (c), because the plaintiff asserted in his complaint that the defendant held himself out as a specialist in the field of emergency medicine. Relying on the plain language of § 52-190a, as well as its legislative history, the defendant acknowledges that the qualifications for the author of the opinion letter are narrower than those for an expert to testify at trial pursuant to § 52-184c (d), but emphasizes that this restriction is intended to ensure the validity of the proffered opinion as to the legitimacy of the action, given the defendant's lack of an opportunity to test the author's qualifications at the pleading stage. We agree with the defendant and conclude that, because the plaintiff alleged in his complaint that the defendant was a specialist in emergency medicine, the author of the opinion letter pursuant to § 52-190a (a) had to be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d).

We begin with the relevant statutory language. General Statutes (Rev. to 2005) § 52-190a (a), as amended

by P.A. 05-275, § 2, provides in relevant part: "No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . *To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section,* that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. *The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion,* with the name and signature of the similar health care provider expunged, to such certificate. . . ." (Emphasis added.) See also footnote 1 of this opinion for the complete text of General Statutes (Rev. to 2005) § 52-190a (a), as amended by P.A. 05-275, § 2.

Section 52-190a (a) refers to similar health care providers under § 52-184c, which utilizes that term as one of art, both to establish the standard of care that the plaintiff alleges was breached in a malpractice action; see General Statutes § 52-184c (a); as well as in part to

establish a health care provider's qualifications to testify as an expert witness. See General Statutes § 52-184c (d). With respect to those health care providers who are board certified or trained and experienced as specialists, or who, like the defendant in the present case, hold themselves out as specialists,[9] a similar health care provider is "one who: (1) Is trained and experienced in the same specialty; *and* (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'." (Emphasis added.) General Statutes § 52-184c (c).

Citing various trial courts' differing interpretations of § 52-190a (a) as evidence of its ambiguity,[10] the plaintiff argues that § 52-190a (a) is ambiguous with respect to the qualifications of the author of the opinion letter because the reference in § 52-190a (a) to § 52-184c is to § 52-184c in its entirety, and does not specifically enumerate whether the author must be a similar health care provider as defined by subsections (b) or (c) of

[9] Subsection (b) of § 52-184c defines similar health care provider with respect to a health care provider who "is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist . . . ." See footnote 2 of this opinion for the text of § 52-184c (b).

[10] Compare, e.g., *Cataldo* v. *Zuccala*, Superior Court, judicial district of Waterbury, Docket No. X02 CV-06-5004649-S (September 27, 2007) ("Thus, if the defendant is a board certified surgeon, [the] plaintiff cannot attach the opinion of an internist or general practitioner. Furthermore, if the defendants are board certified internists, [§ 52-190a] requires that the similar health care provider be a board certified internist. The internist offering an opinion in this case was not board certified."), with *DelMonte* v. *Arkins*, Superior Court, judicial district of New Haven, Docket No. CV-07-5014812-S (September 24, 2008) (board certified anesthesiologist specializing in pain management could author opinion letter in case against board certified neurosurgeon specializing in pain management).

§ 52-184c, or, rather, may be a provider otherwise qualified to testify as an expert pursuant to § 52-184c (d). Given the relatively low threshold necessary to establish ambiguity for purposes of statutory interpretation, namely, the existence of more than one "reasonable" reading for the statute; see, e.g., *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 679; we agree with the plaintiff that § 52-190a (a) is ambiguous when read in isolation. Section 1-2z, however, also directs us to consider related provisions to determine whether the text is ambiguous.

Given the explicit cross-reference in the relevant statutes, we must read § 52-190a (a) in conjunction with § 52-184c, which clearly is a related statute. We first note that the use of the phrase similar health care provider in § 52-190a (a) is linguistically critical because qualifying as a similar health care provider is one of "two ways for an expert to qualify to testify in an action against a specialist." *Grondin* v. *Curi*, 262 Conn. 637, 651, 817 A.2d 61 (2003). A trial court evaluating a prospective expert's qualifications to testify in a medical malpractice action must either decide that the expert is either a similar health care provider as defined by subsections (b) or (c) of § 52-184c, *or* make a discretionary determination that, " 'to the satisfaction of the court, [the expert] possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.' General Statutes § 52-184c (d)." *Grondin* v. *Curi*, supra, 651. Given the legislature's specific articulations of who is a similar health care provider under § 52-184c (b) and (c), we have hewn

very closely to that language and declined to modify or expand it in any way. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 92–93, 828 A.2d 31 (2003) (emphasizing statutory definition of similar health care provider under § 52-184c [c] and concluding that expert witness need not be licensed in Connecticut in order to testify); *Grondin* v. *Curi*, supra, 651–52 (because proffered expert "had not taught or practiced medicine within five years before the claim of malpractice arose," he had to be similar health care provider as defined by § 52-184 [c], which "is silent as to any element of time," meaning that "the legislature did not intend for the testimony of a board certified expert physician to be subject to any time-based limitations").

Thus, the legislature's use of the term similar health care provider in § 52-190a, with a cross-reference to § 52-184c, is significant, because, as the Appellate Court aptly noted, had the legislature desired to broaden the pool of physicians permitted to provide an opinion letter, it "could have allowed opinion letters to be authored by a 'qualified health care provider,' thereby allowing either similar or nonsimilar health care providers to author opinion letters in compliance with § 52-190a (a). Rather, when establishing the guidelines for the opinion letter, the legislature clearly and unambiguously referred to a 'similar health care provider.' "[11] *Bennett*

---

[11] Even a cursory review of other states' legislation and case law in this area illustrates that, had the legislature wished to broaden the array of health care providers eligible to author opinion letters, it could have used less restrictive language more suitable for that task. See, e.g., *Cookson* v. *Price*, 393 Ill. App. 3d 549, 552–53, 914 N.E.2d 229 (2009) (under Illinois statute, report "must be from a health professional licensed in the same profession, with the same class of license, as the defendant," but concluding that plaintiff should have been permitted to file amended report when initial report was defective because it was authored by physician specializing in physical medicine and rehabilitation, rather than physical therapy assistant), appeal granted, 235 Ill. 2d 586, 924 N.E.2d 454 (2010); *Bates* v. *Gilbert*, 479 Mich. 451, 456–61, 736 N.W.2d 566 (2007) (under Michigan statute, affidavit of merit must be from "health professional who the plaintiff's attorney

v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 548. Given that "a court must construe a statute as it finds it, without reference to whether it thinks the statute would have been or could be improved by the inclusion of other provisions"; (internal quotation marks omitted) *Grondin* v. *Curi*, supra, 262 Conn. 652; we must not disturb the legislature's selection of the phrase similar health care provider and, in cases of specialists, we conclude that the author of an opinion letter pursuant to § 52-190a (a) must satisfy the definition of that term as articulated in § 52-184c (c).

The plaintiff contends, however, that adhering to the plain language of the statute and the narrow definition of similar health care provider yields the absurd result of potentially precluding highly qualified expert witnesses from participating in the prelitigation inquiry by authoring opinion letters. Given that this absurdity argument is reasonable, we turn to the relevant extra-textual sources and conclude that hewing closely to the term similar health care provider, rather than expansively reading § 52-190a (a) to allow any physician who might qualify as an expert under § 52-184c (d) to author an opinion letter, best effectuates the purpose of § 52-190a (a), which originally was enacted as part of the

reasonably believes meets the requirements for an expert witness under [the statute]," and concluding that dismissal was required because plaintiff could not reasonably have believed that ophthalmologist was qualified to testify against optometrist); *Borger* v. *Eighth Judicial District Court*, 120 Nev. 1021, 1024, 102 P.3d 600 (2004) (Nevada statute requires affiant to "practice or have practiced in an area that is 'substantially similar to the type of practice engaged in at the time of the . . . alleged malpractice' "); *Ryan* v. *Renny*, 203 N.J. 37, 51–52, 999 A.2d 427 (2010) (noting that New Jersey affidavit of merit statute was modified from former requirement that affiant be "licensed" and have "expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years" to present requirement that affiant have, inter alia, "the same specialty or subspecialty" [internal quotation marks omitted]).

Tort Reform Act of 1986; see Public Acts 1986, No. 86-338, § 12; and "required the plaintiff in any medical malpractice action to conduct 'a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]' and to file a certificate 'that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.' . . . The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence, but permitted the plaintiff to rely on such an opinion to support his good faith belief. The . . . purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions." (Citation omitted.) *Dias* v. *Grady*, 292 Conn. 350, 357, 972 A.2d 715 (2009).

Nearly twenty years later, the legislature enacted P.A. 05-275 as a comprehensive effort to control significant and continued increases in malpractice insurance premiums by reforming aspects of tort law, the insurance system and the public health regulatory system. See, e.g., 48 S. Proc., Pt. 14, 2005 Sess., p. 4407, remarks of Senator Andrew J. McDonald; 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9440, remarks of Representative Michael P. Lawlor. Section 2 of P.A. 05-275 "amended § 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to obtain the written opinion of a similar health care provider that 'there appears to be evidence of medical negligence' and to attach the opinion to the certificate of good faith to be filed with the complaint. . . . In addition, the amendment provided that the failure to file the written opinion would be grounds for dismissal of the complaint." (Citation omitted.) *Dias* v. *Grady*, supra, 292 Conn. 357; see also id., 359 (concluding that phrase "medical negligence"

in § 52-190a [a] is limited solely to standard of care, and that plaintiffs were not required to obtain opinion of similar health care provider with respect to causation).

"The legislative history of this amendment indicates that it was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts."[12] Id., 357–58; see also 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9469, remarks of Representative Christel Truglia (noting that existing "good faith requirement has done little to address the escalating cost of medical liability insurance because this has not been enforced"). As in *Dias* v. *Grady*, supra, 292 Conn. 358 and n.7, we find particularly instructive the testimony of Attorney Michael D. Neubert, representing the Connecticut State Medical Society, before the judiciary committee. See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 314, 819 A.2d 260 (2003) ("testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address

---

[12] In *Dias*, we relied on the testimony of Attorney Michael D. Neubert, representing the Connecticut State Medical Society, before the judiciary committee, in support of the bill enacted as P.A. 05-275. See *Dias* v. *Grady*, supra, 292 Conn. 358 and n.7. Responding to questions from Senator Edward Meyer, Attorney Neubert emphasized that problems had arisen with "cases where attorneys, based on their own judgment and maybe in good faith have misread what an expert's told them, we don't know now what an expert's told them.

"Very often you hear what you want to hear as an attorney, or interpret what's been told to you as you want to interpret it. The fact of the matter is that [the defendant is unaware whether] a letter's been provided or he/ she can't get a letter.

"In other words, if the doctor's not willing to sign on the dotted line, maybe that's a good indication that this isn't a good case to bring. We don't have that hammer, so to speak, over the plaintiff's counsel's head at this point.

"If part of what we're trying to do here is eliminate those cases which should not be in the system then I think this serves to do it." Conn. Joint Standing Committee Hearings, Judiciary, 2005 Sess., Pt. 18, p. 5553.

by the legislation" [internal quotation marks omitted]). After explaining the problem caused by plaintiffs misrepresenting or misunderstanding physicians' opinions as to the merits of their actions; see footnote 12 of this opinion; Attorney Neubert emphasized twice in his written testimony the need for an opinion from a similar health care provider prior to the commencement of a medical malpractice action, in order to "help [e]nsure that there is a reasonable basis for filing a medical malpractice case under the circumstances and . . . eliminate some of the more questionable or meritless cases filed under the present statutory scheme." Conn. Joint Standing Committee Hearings, Judiciary, 2005 Sess., Pt. 19, pp. 5743–44. Indeed, in speaking in support of the amendments to § 52-190a during floor debates, Representative Lawlor acknowledged that this change would "[make] it much more difficult to bring a medical malpractice action in court"; 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9445; calling it a "considerably more significant . . . hurdle to overcome in order to file a medical malpractice case."[13] Id., p. 9501.

---

[13] The plaintiff relies on Representative Lawlor's statement during House debate wherein he remarked: "I do believe it's fair to say that more often than not, if it comes to trial, that the expert who gave the initial opinion would probably wind up being the expert who would testify at trial." 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9503. The plaintiff fails, however, to consider the import of this statement in its proper context. Specifically, Representative Lawlor was responding to a question from Representative William A. Hamzy about the discoverability of the opinion letter author's identity vis-á-vis the standard discovery and trial process. See id., pp. 9501–9502. Indeed, Representative Lawlor emphasized that the author's name would subsequently be disclosed if he "were the expert whom the plaintiff intended to call . . . in the actual case," and that "we're not saying that the physician who will ultimately testify at the trial as the expert would remain a secret, just this initial showing this good faith certificate. It's the identity of the particular physician who writes that which would be withheld from public disclosure . . . ." Id., pp. 9502–9503. Thus, Representative Lawlor's remarks were not directed specifically at explaining the minimum qualifications of the opinion letter author; indeed, he candidly emphasized that he is "not personally an expert on medical malpractice cases and their procedures . . . ." Id., p. 9503.

Thus, we agree with the Appellate Court that strictly adhering to the legislature's articulation of who is a similar health care provider "may be harsh to would-be plaintiffs," but is not "absurd or unworkable." *Bennett* v. *New Milford Hospital, Inc.*, supra, 117 Conn. App. 549. Specifically, the text of the related statutes and the legislative history support the Appellate Court's determination that, unlike § 52-184c (d), which allows for some subjectivity as it gives the trial court discretion in determining whether an expert may testify, "§ 52-190a establishes objective criteria, not subject to the exercise of discretion, making the prelitigation requirements more definitive and uniform" and, therefore, not as dependent on an attorney or self-represented party's subjective assessment of an expert's opinion and qualifications. Id.; see also *Williams* v. *Hartford Hospital*, 122 Conn. App. 597, 598, 600, 1 A.3d 130 (2010) (opinion letters from board certified internist and board certified neurologist did not satisfy requirement of § 52-190a [a] in action against board certified anesthesiologist). Accordingly, we conclude that, in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d).

Along with the trial lawyers, the plaintiff argues, however, in his reply brief, that the defendant is not board certified and the opinion letter is, therefore, sufficient because it was authored by a similar health care provider as defined in § 52-184c (b), which applies to a defendant health care provider who is "not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist . . . ." For these health care providers, § 52-184c (b) defines a similar health care provider as "one who: (1) Is

licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." The plaintiff and the trial lawyers claim that the legislature's use of the disjunctive word "or" in § 52-184c (b) means that the legislature intended its various terms to apply as alternative choices; that is, since the defendant is not board certified, the similar health care provider definition set forth in § 52-184c (b) should apply to him, regardless of the fact that the plaintiff alleged in his complaint that the defendant holds himself out as a specialist in emergency medicine.

Although we ordinarily decline to address claims made for the first time in a reply brief; see, e.g., *State v. Lopez*, 280 Conn. 779, 816 n.25, 911 A.2d 1099 (2007); we nevertheless respond to this argument in the interest of providing a logical construction of the entire statute. Although this argument seems compelling at first glance given the well established proposition that the legislature's "use of the disjunctive or between subparts of a statute indicates that the legislature intended its parts to be read separately, in the disjunctive"; (internal quotation marks omitted) *Achillion Pharmaceuticals, Inc. v. Law*, 291 Conn. 525, 534, 970 A.2d 57 (2009); upon closer review, it lacks merit, because subsection (b) of § 52-184c must be read in the context of the entire statute. See *D'Occhio v. Connecticut Real Estate Commission*, 189 Conn. 162, 169–70, 455 A.2d 833 (1983) (rejecting argument that phrase "intervene in or defend" in General Statutes § 20-324e [a] gives real estate commission "choice of intervening independently or on behalf of the [real estate] agent" because "[w]hen the disjunctive phrase relied on by the commission is read

together with [General Statutes] § 20-324g, which specifically gives the commission only a derivative party status in the plenary action, it is clear that the legislature used the word 'or' in the phrase in question in a conjunctive sense"). Adopting a construction that would make § 52-184c (b) applicable to *all* nonboard certified health care providers, regardless of whether they hold themselves out as specialists or are trained and experienced in a medical specialty, would render superfluous the portion of subsection (c) of § 52-184c that applies to a defendant health care provider who "is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, *or holds himself out as a specialist . . . .*" (Emphasis added.) General Statutes § 52-184c (c). This construction would run afoul of the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). Put differently, we construe § 52-184c (b) as establishing the qualifications of a similar health care provider when the defendant is neither board certified nor in some way a specialist, and § 52-184c (c) as establishing those qualifications when the defendant is board certified, "trained and experienced in a medical specialty, or holds himself out as a specialist . . . ." General Statutes § 52-184c (c). Accordingly, on the basis of the plaintiff's allegation in his complaint that the defendant "specializes in the field of emergency medicine," we conclude that the Appellate Court properly

determined that the opinion letter in this case had to be, but was not, authored by a similar health care provider as defined by § 52-184c (c).

## II

We now turn to the second significant issue in this case, namely, whether the Appellate Court properly determined that, under § 52-190a (c), the trial court was required to dismiss the action upon determining that a similar health care provider did not author the opinion letter. The plaintiff, relying on the Appellate Court's opinion in *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 943 A.2d 544 (2008), claims that dismissal was not appropriate because that remedy is limited to the situation wherein a plaintiff fails to attach any opinion letter at all, and that, under § 52-190a (c), any challenges to the sufficiency of that opinion letter should be addressed only after the completion of discovery. The trial lawyers argue further that, under § 52-190a (c), the opinion letter is not jurisdictional in nature, and that, contrary to the conclusion in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 582–83, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009), holding that the grant of a motion to dismiss is the proper remedy for deficiencies under § 52-190a, we should interpret § 52-190a (c) to permit the free amendment of challenged opinion letters to ensure their compliance with the statute. Given the lack of information often present at the pleading stage, the trial lawyers contend that we should conclude that the appropriate procedural vehicle for challenging opinion letters under § 52-190a is the motion to strike, which permits the amendment of a complaint as of right, rather than a motion to dismiss, whereupon amendment lies in the discretion of the trial court.

In response, the defendant contends that dismissal is appropriate when the plaintiff's letter is from a physi-

cian who is not a similar health care provider under § 52-184c and, therefore, not qualified to opine under § 52-190a (a), because that defective letter is tantamount to no letter at all for purposes of evaluating the merit of a medical malpractice action. For their part, the defense lawyers and risk management society rely on *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 569, and *Rios* v. *CCMC Corp.*, supra, 106 Conn. App. 810, and argue that § 52-190a (c) clearly and unambiguously requires the dismissal of actions not supported by letters written by similar health care providers; they contend further that the legislative history of the statute bears out what is evident from its plain language. Finally, the defendant emphasizes that this reading need not be fatal to procedurally flawed, yet meritorious, actions; the defendant posits that, when he moved to dismiss, the plaintiff could have either sought to amend the complaint to include an appropriate opinion letter, or, because the statute of limitations had not yet run at the time of dismissal, refiled the action after dismissal with an appropriate opinion letter. We agree with the defendant and conclude that § 52-190a (c) requires the dismissal of medical malpractice complaints that are not supported by opinion letters authored by similar health care providers.

As is required by § 1-2z, we begin with the language of General Statutes (Rev. to 2005) § 52-190a (c), as amended by P.A. 05-275, which provides: "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." The crux of the parties' dispute in this appeal is whether the legislature's use of the phrase "grounds for the dismissal of the action" renders dismissal a mandatory remedy when the opinion letter required by § 52-190a (a) is inadequate, or whether dismissal is just one of several remedies available to the

court, including treating the challenge as a motion to strike, which would allow repleading as a matter of right. Beginning with the common meaning of the word "ground," we note that the dictionary defines it, in relevant part, as a noun for "a basis for a belief, action, or argument . . . often used in [the plural]." Merriam-Webster's Collegiate Dictionary (10th Ed. 2001). Thus, the dictionary definition of the word ground does not by itself indicate that dismissal of the action is mandatory. We next note, however, the legislature's use of the word "shall" before "grounds for the dismissal . . . ." This indicates that dismissal may well be mandatory, particularly given its role as an enumerated consequence under the statute, because the legislature otherwise could have used the word "may." See, e.g., *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790–91, 961 A.2d 349 (2008). On the basis of this textual analysis, we conclude that the statutory language is ambiguous and proceed to analyze the extratextual sources, namely, the legislative history of the statute.

Like the amendment to § 52-190a (a) requiring the filing of an opinion letter along with the complaint and good faith certificate, § 52-190a (c) was enacted in conjunction with the tort reform aspect of P.A. 05-275, § 2. Given that the legislature is presumed to be aware of the interpretations that the courts have placed on its enactments; see, e.g., *State* v. *Courchesne*, 296 Conn. 622, 717, 998 A.2d 1 (2010); we must view the legislative history of the amendment of § 52-190a (c) through the prism of this court's discussion of the former § 52-190a in *LeConche* v. *Elligers*, 215 Conn. 701, 579 A.2d 1 (1990). In *LeConche* v. *Elligers*, supra, 702–703, this court addressed the consequences, under the former § 52-190a, of the plaintiff's failure to include a certificate of good faith with his medical malpractice complaint. This court concluded that the good faith certificate requirement was not subject matter jurisdictional in

nature because "traditionally the Superior Court has had subject matter jurisdiction of a common law medical malpractice action," and there was no indication in the language or legislative history of § 52-190a that the certificate was intended to be a subject matter jurisdictional barrier. Id., 709–10. Noting "that the general purpose of § 52-190a is to discourage the filing of baseless lawsuits against health care providers"; id., 710; the court concluded that "the lack of a certificate does not defeat what would otherwise be valid jurisdiction in the court. The purpose is just as well served by viewing the statutory requirement that the complaint contain a good faith certificate as a pleading necessity akin to an essential allegation to support a cause of action." Id., 711. Accordingly, the court further concluded that "the absence from the complaint of the statutorily required good faith certificate renders the complaint subject to a motion to strike . . . for failure to state a claim upon which relief can be granted, and to render that absence curable by timely amendment . . . ." Id.

Indeed, this court noted in *LeConche* that § 52-190a did "not address the consequences of a failure to file a certificate," and addressed only "the consequences of filing of what is later deemed to be a false certificate," by authorizing the court to impose " 'an appropriate sanction,' " including disciplinary referral or the payment of costs, including reasonable attorney's fees. Id., 712. The court stated that, even "[a]ssuming without deciding that 'an appropriate sanction' for filing a false certificate includes dismissal, it is clear that such a dismissal would be discretionary, rather than required due to lack of subject matter jurisdiction. . . . The filing of a false certificate that represents that a reasonable precomplaint inquiry was made, where in fact it was not, presents a more compelling scenario for dismissal than the present case. Here, the plaintiffs have merely failed to file a certificate but are prepared to

do so and to establish that they have in fact made a sufficient precomplaint inquiry. It would be incongruous to read § 52-190a as providing subject matter jurisdiction in the former case but depriving the court of such jurisdiction in the latter. Statutes are to be read as contemplating sensible, not bizarre, results."[14] (Citations omitted.) Id., 712–13.

Viewed through the historical prism of *LeConche*, the legislative history of § 52-190a (c) indicates that the legislature adopted that subsection to make clear that dismissal is the mandatory remedy when a plaintiff fails to file an opinion letter that complies with § 52-190a (a). In his remarks on the Senate floor, Senator McDonald stated that the changes to § 52-190a in P.A. 05-275 "[make] substantial improvements over the *current system* because it would require that that report be in writing and presented in a detailed fashion, and a copy of that report, with the name of the doctor supplying it expunged, would be attached to the complaint as an exhibit. *The failure to attach such an opinion would require the court to dismiss the case.*"[15] (Emphasis

[14] This court emphasized further that "the trial court should have permitted the plaintiffs to amend their complaint by filing a certificate, because the court had subject matter jurisdiction and because its denial of the motion to amend was based on a perceived lack thereof. Furthermore, although the proffered certificate did not specifically indicate that the plaintiffs had made a precomplaint inquiry, it did not preclude a finding that such an inquiry had been conducted. . . . Pleadings should be read broadly and realistically, and not narrowly and technically. . . . Thus, the plaintiffs were entitled to amend their complaint, as they sought to do, and to establish pursuant to their amended complaint that they conducted an appropriate precomplaint inquiry." (Citations omitted.) *LeConche* v. *Elligers*, supra, 215 Conn. 715–16.

[15] No party or amicus claims in this certified appeal that a dismissal pursuant to § 52-190a (c) constitutes a dismissal with prejudice. Indeed, we note that, with respect to the nature of the dismissal, in speaking in support of the bill on behalf of the Connecticut Medical Society, Attorney Neubert answered a question from Senator Edward Meyer about whether the dismissal would be "with prejudice," or whether "the plaintiff [can] come back with a new complaint?" Conn. Joint Standing Committee Hearings, supra, p. 5552. In reply, Attorney Neubert stated: "I think the latter. Obviously, the

added.) 48 S. Proc., supra, p. 4411; see also Conn. Joint Standing Committee Hearings, Judiciary, 2005 Sess., Pt. 18, p. 5539, remarks of Attorney Neubert ("failure to obtain and file the written opinion would be grounds for an immediate dismissal of the action").

Inasmuch as the legislative history indicates that a motion to dismiss pursuant to § 52-190a (c) is the only proper procedural vehicle for challenging deficiencies with the opinion letter, and that dismissal of a letter that does not comply with § 52-190a (c) is mandatory, we agree with the Appellate Court's reasoning in its recent decisions in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 582–83, and *Rios* v. *CCMC Corp.*, supra, 106 Conn. App. 820–21, both of which concluded that the grant of a motion to dismiss, rather than a motion to strike, is the proper statutory remedy for deficiencies under § 52-190a, notwithstanding the lack of any indication that P.A. 05-275 has rendered the certificate and opinion letter subject matter jurisdictional in nature.[16] See also *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 583–84 ("[d]ismissal pursuant to [§ 52-190a (c)] is a statutory remedy for any defendant who is subject to a legal action in which the statutorily required written opinion is not annexed to the complaint or initial pleading"); *Rios* v. *CCMC Corp.*, supra, 821 n.8 ("motions to dismiss are [not] limited to jurisdictional challenges").

[s]tatute doesn't say with prejudice. Of course, the [s]tatute of [l]imitations is always an issue. Let's say you were to file a case. The letter doesn't state what he says it says and the court agrees with me and dismisses it.

"I guess clearly he could have another bite at the apple and submit another complaint with another letter or possibly respond by attaching the letter that met the requirements of the [s]tatute.

"I guess my answer is that it doesn't say with prejudice so I assume it is not drafted with prejudice in mind." Id., pp. 5552–53.

[16] Indeed, no party or amicus to this appeal claims that § 52-190a (a) is jurisdictional in nature, or that P.A. 05-275 altered our conclusion in *LeConche* v. *Elligers*, supra, 215 Conn. 701, to that effect.

We note, however, that both the trial lawyers and the defendant acknowledge the potential severity of the statutory dismissal remedy, and, along with an academic commentator; see B. Blank, note, "Medical Malpractice/Civil Procedure—Trap for the Unwary: The 2005 Amendments to Connecticut's Certificate of Merit Statute," 31 W. New Eng. L. Rev. 453, 489 (2009); identify the free amendment of challenged opinion letters as a way to ensure compliance with § 52-190a (a) while protecting nonfrivolous, but procedurally flawed, actions from dismissal.[17] We agree that the remedy of

[17] With respect to the emphasis by the defendant and the trial lawyers on the availability of amendment, we note that the plaintiff herein did not seek to amend his complaint, certificate of good faith and opinion letter either as of right pursuant to Practice Book § 10-59, or by leave of the court pursuant to Practice Book § 10-60. Thus, we are not presented with an opportunity to resolve a division in Superior Court authority concerning whether amendment of the defective pleading, including the substitution of a new opinion letter for one that appears not to comply with § 52-190a (a) or one that was not filed at all, is an appropriate response to a pending motion to dismiss pursuant to § 52-190a (c), in light of the Appellate Court's statement in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585, that, "[g]iven the fallibility existing in the legal profession . . . it is possible that a written opinion of a similar health care provider, *existing at the time of commencement of an action*, might be omitted through inadvertence. In such a scenario, it certainly may be within the discretionary power of the trial judge to permit an amendment to attach the opinion, and, in so doing, deny a pending motion to dismiss." (Emphasis added.) See also id., 586 ("[t]he plaintiff could not turn back the clock and attach by amendment an opinion of a similar health care provider that did not exist at the commencement of the action"). Compare, e.g., *Patenaude* v. *Norwalk Hospital*, Superior Court, judicial district of Fairfield, Docket No. CV-09-5029048 (July 19, 2010) (court lacks "discretion to entertain the plaintiff's attempts to amend her complaint while a motion to dismiss is pending"), and *Morgan* v. *Hartford Hospital*, Superior Court, judicial district of Hartford, Complex Litigation Docket at Hartford, Docket No. X04 CV-075009731-S (May 21, 2009) (in action against vascular surgeon, plaintiff could not respond to motion to dismiss based on fact that initial opinion letter was authored by internist by filing amended complaint with new letter authored by surgeon that "was not in existence when the original complaint was filed"), with *Dixon* v. *Med Now Family Walk-In & Industrial Medical Center*, Superior Court, judicial district of Fairfield, Docket No. CV-08-5014898-S (February 25, 2010) (permitting plaintiff to file new opinion letter authored by advanced practice registered nurse, obtained after start of

dismissal may, standing alone, have harsh results for plaintiffs, particularly when the problems with the opinion letter are as relatively insignificant as they present in this case, given the apparently high and relevant qualifications of its author. Thus, we emphasize that, given the purpose of § 52-190a, which is to screen out frivolous medical malpractice actions, plaintiffs are not without recourse when facing dismissal occasioned by an otherwise minor procedural lapse, like that in this case. First, the legislature envisioned the dismissal as being without prejudice; see footnote 15 of this opinion; and even if the statute of limitations has run, relief may well be available under the accidental failure of suit statute, General Statutes § 52-592. For additional discussion of this particular relief, see the discussion in the companion case also released today, *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 12 A.3d 885 (2011). We conclude, therefore, that the Appellate Court properly concluded that the trial court correctly dismissed this action pursuant to § 52-190a (c).

---

action arising from nursing malpractice, in response to motion to dismiss on ground that initial letter improperly was authored by physician). Inasmuch as this issue is not presented by this certified appeal, we take no position on the continuing viability of this aspect of *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 585–86, which already has been the subject of some question. See *Sestito* v. *Mandara*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. FST CV-096002437-S (August 2, 2010) (criticizing *Votre*, particularly in context of amendment as of right within first thirty days under Practice Book § 10-59, because "the purpose of [§] 52-190a is not thwarted when a good faith certificate and opinion letter are available in such a short time after the filing of the initial complaint"); *Dixon* v. *Med Now Family Walk-In & Industrial Medical Center*, supra (to defeat motion to dismiss based action wherein new letter accompanies amended complaint, plaintiff must have "attached a good faith certificate and a letter from a reasonably appropriate health care provider to the initial complaint"); cf. *Borger* v. *Eighth Judicial District Court*, 120 Nev. 1021, 1029–30, 102 P.3d 600 (2004) (concluding that dismissal without prejudice mandated only for "complete failure to attach an affidavit to the [medical malpractice] complaint," and that trial court "within its sound discretion and considering the need for judicial economy, may grant leave to amend malpractice complaints supported by disputed affidavits under circumstances where justice so requires").

III

Finally, we turn to the plaintiff's claim that § 52-190a violates the separation of powers provision of article second of the Connecticut constitution, as amended by article eighteen of the amendments. See footnote 8 of this opinion. Specifically, the plaintiff contends that § 52-190a, by establishing a prelitigation procedure and depriving trial courts of "the discretion to determine which experts and evidence may be utilized to establish a prima facie case," constitutes impermissible legislative interference with the judicial branch's inherent and exclusive power to regulate court proceedings. In response, the defendant contends that: (1) we should decline to review this claim because it is being raised before this court for the first time in this certified appeal; and (2) § 52-190a is a constitutional measure for preventing frivolous medical malpractice actions, and does not deprive the trial court of discretion in this regard. We decline to review this claim because it was neither preserved at trial nor raised in the plaintiff's petition for certification.

At the outset, we note that the plaintiff concedes in his reply brief that this constitutional claim was not preserved before the trial court or Appellate Court. The plaintiff asks us, however, to review his claim pursuant to the bypass doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Although the *Golding* doctrine is applicable in civil cases; see, e.g., *Perricone* v. *Perricone*, 292 Conn. 187, 212 n.24, 972 A.2d 666 (2009); the plaintiff's request, made for the first time in his reply brief, runs afoul of the well settled rule that a party may not seek *Golding* review for the first time in a reply brief. See, e.g., *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 532, 876 A.2d 1178 (2005).

Moreover, even if we were inclined to overlook the plaintiff's failure properly to request *Golding* review, his

constitutional claim suffers from a second procedural defect, namely, his failure to raise it in his petition for certification to appeal from the judgment of the Appellate Court. "If a party appeals to this court in a petition for certification, we will ordinarily consider only those questions squarely raised in that petition." (Internal quotation marks omitted.) *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 139, 712 A.2d 947 (1998); see also *Gibson* v. *Capano*, 241 Conn. 725, 729, 699 A.2d 68 (1997) (noting that issues beyond those raised in petition for certification may be addressed in context of properly presented alternative grounds for affirming judgment of Appellate Court). Accordingly, we decline to review the plaintiff's constitutional claim on the ground that it is not properly before us in this certified appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.