KRISTIN WILKINS ET AL. *v.* CONNECTICUT
CHILDBIRTH AND WOMEN'S
CENTER ET AL.
(AC 32172)

Beach, Bear and Sheldon, Js.

Argued February 14—officially released May 22, 2012

*Carey B. Reilly*, with whom was *Cynthia C. Bott*, for the appellants (plaintiffs).

*Matthew M. Sconziano*, for the appellees (defendants).

*Opinion*

SHELDON, J. In this case, the plaintiff Kristin Wilkins[1] appeals from the judgment of the trial court dismissing her medical malpractice action against the defendants, Connecticut Childbirth & Women's Center (Connecticut Childbirth) and Women's Health Associates, P.C. (Women's Health), on the basis of the plaintiff's failure to comply with the requirements of General Statutes (Rev. to 2007) § 52-190a.[2] The plaintiff claims that because

---

[1] Kristin Wilkins' husband, Billy Wilkins, filed a claim for loss of consortium. Because his claim is derivative of his wife's malpractice claims, and, consequently, their claims on appeal are identical, we hereafter, for the sake of clarity, refer in this opinion to Kristin Wilkins as the plaintiff.

[2] General Statutes (Rev. to 2007) § 52-190a provides: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are

she attached to her complaint a good faith certificate from her attorney, in addition to a letter from a similar health care provider stating the belief that there existed

grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

"(b) Upon petition to the clerk of the court where the action will be filed, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

We note that the current revision of § 52-190a includes certain technical changes enacted into law in 2007 through Public Acts 2007, No. 07-65, § 1. Hereinafter, unless otherwise indicated, all references to § 52-190a in this opinion are to the 2007 revision of the statute.

evidence of medical negligence, the court improperly granted the defendants' motion to dismiss pursuant to § 52-190a (c). We conclude that the opinion letter submitted by the plaintiff was not from a similar health care provider, as defined in General Statutes § 52-184c,[3] and, thus that the plaintiff failed to comply with the

[3] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

requirements of § 52-190a (a). Accordingly, we affirm the judgment of the trial court.[4]

The following factual and procedural history is relevant to the plaintiff's claim on appeal. On June 11, 2009, the plaintiff filed this medical malpractice action based on alleged negligence on the part of employees or agents of the defendants during the April 17, 2007 delivery of her child, and, subsequently, at postpartum office visits. The plaintiff alleges in her complaint that Connecticut Childbirth is a medical facility that is staffed by various health care providers, including physicians, nurse midwives, surgeons and nurses, who specialize in providing obstetrical and gynecological care. Women's Health owned, operated, controlled and/or had a financial interest in Connecticut Childbirth. The plaintiff alleges that Katy Maker, Catherine Parisi and Catherine Gallagher, who are certified nurse midwives, and Carly Detterman,[5] who was a registered nurse and midwife in training at the time treatment was rendered to the plaintiff, were agents or employees of the defendant medical practices who negligently failed to diagnose and to treat a fourth degree tear of the plaintiff's vaginal tissue, perineal skin and anal sphincter at the time of delivery and during postpartum checkups. As a result of that alleged negligence, the plaintiff has allegedly sustained severe and permanent injuries, and consequently, her husband has sustained a loss of her consortium.

With her complaint, the plaintiff submitted a good faith certificate signed by her attorney, who represented

[4] In her brief to this court, the plaintiff also sought an order allowing her to amend her complaint to cure any alleged defect with the opinion letter. At oral argument before this court, the plaintiff withdrew that request.

[5] In her complaint, the plaintiff referred to Detterman as a certified nurse midwife. Subsequent to the filing of the complaint, it was discovered that, at the time of treatment, Detterman was not yet a certified nurse midwife. Detterman has since received such certification.

therein that he had made a reasonable inquiry into the circumstances of the plaintiff's claims and that, on the basis of that inquiry, he believed in good faith that the defendants and their servants, agents or employees had been negligent in their treatment of the plaintiff. Additionally, the plaintiff submitted a document entitled "Physician's Opinion Pursuant to [General Statutes §] 52-190a." The opinion letter was authored by a board certified obstetrician and gynecologist, who opined, in relevant part, that Maker, one of the certified nurse midwives who cared for the plaintiff, "departed from the accepted standard of care when she failed to diagnose and repair the fourth degree tear following delivery of the fetus and at the postpartum visits." In conclusion, the author of the letter stated: "[I]t is my opinion that there appears to be evidence of medical negligence on the part of . . . Maker and Connecticut Childbirth and Women's Center."

On August 6, 2009, the defendants filed a motion to dismiss the plaintiff's action, pursuant to § 52-190a (c), on the ground that the physician opinion letter submitted by the plaintiff failed to satisfy the requirements of § 52-190a (a) because the letter was not authored by a similar health care provider, as defined in § 52-184c (c). Because the care rendered to the plaintiff was provided by certified nurse midwives or, as the allegations pertain to Detterman, by a registered nurse, the defendants argued that the plaintiff was required to submit an opinion letter authored by a certified nurse midwife or a registered nurse in order to satisfy § 52-184c (c). The plaintiff filed an objection, claiming that an obstetrician "is considered to be a 'similar health care provider' for purposes of . . . § 52-184c (c) when rendering an opinion regarding the standard of care applicable to certified nurse midwives . . . and registered nurses . . . engaged in supervising a patient's labor and delivery . . . ." The plaintiff also argued that

the defendants are institutions to which § 52-184c does not apply, because the definitions of "similar health care provider" set forth therein refer to individuals, not institutions. The court agreed with the defendants, finding that the plaintiff's action was based on the negligence of the individuals who cared for the plaintiff, and the defendants as the employers of those individuals. On that basis, the court concluded that the plaintiff was required, pursuant to §§ 52-190a (a) and 52-184c (c), to submit an opinion letter by an individual who is trained, experienced and certified in nurse midwifery or nursing. Because the plaintiff failed to do so, the court dismissed her action. This appeal followed.

Before addressing the plaintiff's claims on appeal, we address the applicable standard of review, which is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10–11, 12 A.3d 865 (2011).

The plaintiff claims that the court improperly dismissed her complaint on the ground that she did not submit an opinion letter authored by a similar health care provider and the opinion letter that she submitted, which was authored by an obstetrician, was sufficient

to meet the requirements of §§ 52-190a (a) and 52-184c.[6] We disagree.

We begin our analysis by setting forth the applicable statutory provisions. Section 52-190a (a) provides in relevant part that before filing a personal injury action against a health care provider, the attorney or party filing the action must make "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." Furthermore, the statute requires that to show a good faith belief, the complaint must be accompanied by a written and signed opinion of a similar health care provider, as defined in § 52-184c, stating that there appears to be evidence of medical negligence and including a detailed basis for the formation of that opinion. To determine if an opinion letter meets the requirements of § 52-190a (a), the letter must be read in conjunction with § 52-184c, which defines the term "similar health care provider." For health care providers who are board certified or hold themselves out as specialists, such as the certified nurse midwives and registered nurse who treated the plaintiff in this case, § 52-184c (c) defines "similar health care provider" as "one who: (1) [i]s trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . ."[7]

The plaintiff contends that an opinion letter by an obstetrician is sufficient to meet the requirements of

---

[6] The plaintiff also claims that because the roles and/or specialties or certifications of various defendant health care providers may not be known when initiating litigation, § 52-190a may be satisfied if a plaintiff submits an opinion letter that meets the requirements of § 52-184c (d), an expert who can testify in court. Because the individuals who allegedly were negligent in the treatment of the plaintiff in the present case were known to the plaintiff, we need not address this hypothetical.

[7] Subsection (b) of § 52-184c pertains to defendant health care providers who are not board certified or do not hold themselves out as specialists.

§ 52-190a because obstetricians and nurse midwives both provide obstetrical care to patients and the author of the opinion letter that she submitted has both taught and supervised certified nurse midwives and is familiar with the standard of care required of them. Additionally, the plaintiff argues that, because there is a statutory requirement that nurse midwives work in collaboration with obstetricians; see General Statutes §§ 20-86a and 20-86b;[8] an obstetrician is a similar health care provider who may author a prelitigation opinion letter in an action concerning purported negligence by nurse midwives.[9] The plaintiff's claim in this regard is controlled by *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1. In *Bennett*, our Supreme Court concluded that, "in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)." Id., 21. In other words, one's familiarity with or knowledge of the relevant standard of care, for purposes of authoring a prelitigation opinion letter, is not a proper consideration in determining the adequacy of that letter if the author does not meet the statutory definition of a "similar health care provider." Thus, pursuant to *Bennett*, the plain language of §§ 52-190a (a) and 52-184c (c) dictates that a "similar health care provider" with respect to the plaintiff's

[8] General Statutes § 20-86a (1) defines "nurse midwifery" as "the management of women's health care needs, focusing particularly on family planning and gynecological needs of women, pregnancy, childbirth, the postpartum period and the care of newborns, occurring within a health care team and in collaboration with qualified obstetrician-gynecologists."

General Statutes § 20-86b provides in relevant part: "Nurse-midwives shall practice within a health care system and have clinical relationships with obstetrician-gynecologists that provide for consultation, collaborative management or referral, as indicated by the health status of the patient. . . ."

[9] We note that § 20-86b further provides that "[n]urse-midwifery care shall be consistent with the standards of care established by the American College of Nurse-Midwives."

health care providers would be one who is trained and experienced in nurse midwifery or nursing and is certified in nurse midwifery or nursing. The author of the opinion letter submitted by the plaintiff is neither.

The plaintiff contends that *Bennett* does not apply to the facts of this case because the definitions of a "similar health care provider" in § 52-184c, which dictate the parameters for selecting the appropriate author of a prelitigation opinion letter, refer to individuals, not institutions. The plaintiff claims that, because § 52-184c establishes no requirements for filing medical malpractice actions against institutions, the good faith requirement set forth in § 52-190a must be construed broadly in such cases, and, so construed, she claims that that requirement has been met. The plaintiff claims that because the defendant institutions provided obstetrical care and are comprised of medical professionals who render obstetrical care, either a midwife or an obstetrician could properly have authored the required opinion letter.

In *Ali* v. *Community Health Care Plan, Inc.*, 261 Conn. 143, 144–45, 801 A.2d 775 (2002), the plaintiff filed a medical malpractice action against the defendant health maintenance organization alleging that a nurse midwife employed by the defendant had been negligent in failing to advise her to report to a physician for medical treatment after she told the midwife that she had experienced a vaginal discharge approximately two weeks after undergoing amniocentesis. As a result of that negligence, the plaintiff claimed that she was forced to terminate her pregnancy by inducing labor prematurely, which resulted in the death of her preterm baby. Id., 145. On the basis of such allegations, the trial court determined, and the Supreme Court agreed, that "the plaintiff's theory of the case at the trial court was one of vicarious liability. In other words, under the doctrine of respondeat superior, the defendant could

be held liable for the negligent acts of its employee . . . . This was not a case regarding any purported institutional negligence on the part of the defendant . . . ." Id., 151. On that basis, the court held that it was the actions of the *employee* that were "relevant to the question of negligence." Id. The court stated that "§ 52-184c (a) . . . establishes the standard of care to be applied in a medical malpractice case. Section 52-184c (a) provides in relevant part: 'The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.' A 'health care provider' is a statutorily defined term, meaning 'any person, corporation, facility or institution licensed by the state to provide health care or professional services, *or an officer, employee or agent thereof acting in the course and scope of his employment.*' . . . General Statutes § 52-184b (a).

"Thus, under the statute, the relevant health care provider in the case could have been either the defendant, as the corporate entity providing health care services to the plaintiff, or . . . the individual caregiver [as] an employee of the defendant. Because the plaintiff's case centered upon [the employee's] decision not to advise the plaintiff to come in for an examination, [the employee] served as the health care provider for purposes of this negligence action and not the defendant." (Emphasis in original.) *Ali* v. *Community Health Care Plan, Inc.,* supra, 261 Conn. 152–53.

Here, the opinion letter that the plaintiff submitted focused on the alleged negligence of one of the nurse midwives who treated her and contained no separate opinions as to the alleged negligence of the defendant

institutions.[10] Here, then, as in *Ali*, it is the actions of the individual caregivers—the nurse midwives or the registered nurse—that are relevant to the question of negligence, forming the basis for the inquiry as to whether there was a breach of any duty owed to the plaintiff for which the defendants, as their employer, would be vicariously liable. Because the plaintiff failed to submit an opinion letter authored by an individual who is trained, experienced and certified in nurse midwifery or nursing, the court properly concluded that she failed to meet the requirements of § 52-190a (a).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The plaintiff's complaint alleges that the defendants "failed to provide certified nurse midwives who possessed the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise the plaintiff," and that they "failed to promulgate and/or enforce rules, regulations, standards and protocols for the care and treatment of patients such as the plaintiff . . . ."