******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KRISTIN WILKINS ET AL. *v.* CONNECTICUT
CHILDBIRTH AND WOMEN'S
CENTER ET AL.
(SC 18998)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued March 25—officially released December 9, 2014*

*Carey B. Reilly*, with whom, on the brief, was *David M. Bernard*, for the appellants (plaintiffs).

*Matthew M. Sconziano*, for the appellees (defendants).

*Opinion*

EVELEIGH, J. The plaintiff Kristin Wilkins[1] appeals from the judgment of the Appellate Court affirming the judgment of the trial court dismissing her medical malpractice action against the defendants, Connecticut Childbirth & Women's Center (Connecticut Childbirth) and Women's Health Associates, P.C. (Women's Health), on the basis of the plaintiff's failure to comply with the requirements of General Statutes § 52-190a.[2] Because the plaintiff brought this action against the defendants principally on the basis of vicariously liability for the alleged negligence of specified employees or agents, namely, certain certified nurse-midwives, we conclude that § 52-190a (a) required the plaintiff to supply an opinion letter authored by a similar health care provider as defined by General Statutes § 52-184c (c), namely, someone who is certified in the same specialty as those nurse-midwives. Because the plaintiff provided an opinion letter of a physician who is board certified in obstetrics, which is the same specialty practiced by the nurse-midwives, we conclude that the Appellate Court improperly affirmed the judgment of the trial court dismissing this action pursuant to § 52-190a (c). Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On June 11, 2009, the plaintiff filed this medical malpractice action based on alleged negligence on the part of employees or agents of the defendants during the April 17, 2007 delivery of her child, and, subsequently, at postpartum office visits. The plaintiff alleges in her complaint that Connecticut Childbirth is a medical facility that is staffed by various health care providers, including physicians, [nurse-midwives], surgeons and nurses, who specialize in providing obstetrical and gynecological care. Women's Health owned, operated, controlled and/or had a financial interest in Connecticut Childbirth. The plaintiff alleges that Katy Maker, Catherine Parisi and Catherine Gallagher, who are certified [nurse-midwives], and Carly Detterman, who was a registered nurse and midwife in training at the time treatment was rendered to the plaintiff, were agents or employees of the [defendants] who negligently failed to diagnose and to treat a fourth degree tear of the plaintiff's vaginal tissue, perineal skin and anal sphincter at the time of delivery and during postpartum checkups. As a result of that alleged negligence, the plaintiff has allegedly sustained severe and permanent injuries, and consequently, her husband has sustained a loss of her consortium.

"With her complaint, the plaintiff submitted a good faith certificate signed by her attorney, who represented therein that he had made a reasonable inquiry into the circumstances of the plaintiff's claims and that, on the

basis of that inquiry, he believed in good faith that the defendants and their servants, agents or employees had been negligent in their treatment of the plaintiff. Additionally, the plaintiff submitted a document entitled 'Physician's Opinion Pursuant to [General Statutes §] 52-190a.' The opinion letter was authored by a board certified obstetrician and gynecologist, who opined, in relevant part, that Maker, one of the certified [nurse-midwives] who cared for the plaintiff, 'departed from the accepted standard of care when she failed to diagnose and repair the fourth degree tear following delivery of the fetus and at the postpartum visits.' In conclusion, the author of the letter stated: '[I]t is my opinion that there appears to be evidence of medical negligence on the part of . . . Maker and Connecticut Childbirth and Women's Center.'

"On August 6, 2009, the defendants filed a motion to dismiss the plaintiff's action, pursuant to § 52-190a (c), on the ground that the physician opinion letter submitted by the plaintiff failed to satisfy the requirements of § 52-190a (a) because the letter was not authored by a similar health care provider, as defined in § 52-184c (c). Because the care rendered to the plaintiff was provided by certified [nurse-midwives] or, as the allegations pertain to Detterman, by a registered nurse, the defendants argued that the plaintiff was required to submit an opinion letter authored by a certified [nurse-midwife] or a registered nurse in order to satisfy § 52-184c (c). The plaintiff filed an objection, claiming that an obstetrician 'is considered to be a "similar health care provider" for purposes of . . . § 52-184c (c) when rendering an opinion regarding the standard of care applicable to certified [nurse-midwives] . . . and registered nurses . . . engaged in supervising a patient's labor and delivery . . . .' The plaintiff also argued that the defendants are institutions to which § 52-184c does not apply, because the definitions of 'similar health care provider' set forth therein refer to individuals, not institutions. The [trial] court agreed with the defendants, finding that the plaintiff's action was based on the negligence of the individuals who cared for the plaintiff, and the defendants as the employers of those individuals. On that basis, the [trial] court concluded that the plaintiff was required, pursuant to §§ 52-190a (a) and 52-184c (c), to submit an opinion letter by an individual who is trained, experienced and certified in [nurse-midwifery] or nursing. Because the plaintiff failed to do so, the [trial] court dismissed her action." (Footnote omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 135 Conn. App. 679, 683–85, 42 A.3d 521 (2012). The plaintiff appealed from the judgment of the trial court to the Appellate Court.

On appeal to the Appellate Court, the plaintiff claimed that the trial court improperly dismissed her complaint on the ground that she did not submit an opinion letter authored by a similar health care provider. Specifically,

the plaintiff claimed that the opinion letter that she submitted, which was authored by an obstetrician, was sufficient to meet the requirements of §§ 52-190a (a) and 52-184c.[3] Id., 685–86.

The Appellate Court affirmed the judgment of the trial court, concluding that "[b]ecause the plaintiff failed to submit an opinion letter authored by an individual who is trained, experienced and certified in [nurse-midwifery] or nursing, the court properly concluded that she failed to meet the requirements of § 52-190a (a)." Id., 690.

The plaintiff filed a petition for certification to appeal, which we granted, limited to the following question: "Did the Appellate Court properly determine that, in this action against institutional defendants . . . § 52-190a (a) required that the 'similar health care provider' opinion letter be authored by a person trained and experienced in [nurse-midwifery] or nursing, instead of being written by a board certified obstetrician and gynecologist?" *Wilkins* v. *Connecticut Childbirth & Women's Center*, 305 Conn. 921, 47 A.3d 881 (2012).

On appeal to this court, the plaintiff asserts that the Appellate Court improperly affirmed the judgment of the trial court and improperly concluded that § 52-190a (a) required the plaintiff to provide an opinion letter authored by a person certified in nurse-midwifery or nursing instead of a board certified obstetrician and gynecologist. Specifically, the plaintiff claims that § 52-190a (a) does not require a good faith opinion certification for a claim against an institutional defendant. The plaintiff further claims that, even if § 52-190a (a) requires a good faith opinion certification for institutional defendants, the opinion letter submitted from a board certified obstetrician and gynecologist meets the requirements of § 52-184c (c). The plaintiff also claims that the use of a good faith opinion certification from a physician who is board certified in obstetrics and gynecology satisfies the purpose of § 52-190a (a). In response, the defendants assert that the Appellate Court properly affirmed the judgment of the trial court and properly concluded that §§ 52-190a (a) and 52-184c (c) required the plaintiff to provide an opinion letter authored by a person certified in nurse-midwifery or nursing. Specifically, the defendants claim that a good faith opinion certification is required for an institutional defendant and that, in the present case, a physician who is board certified in obstetrics and gynecology does not meet the definition of a " 'similar health care provider' " in § 52-184c (c). Although we conclude that the plaintiff was required to submit an opinion letter in accordance with § 52-184c (c), we agree with the plaintiff that her letter satisfied her obligations and, accordingly, we reverse the judgment of the Appellate Court.

Before addressing the plaintiff's claims on appeal, we

address the applicable standard of review, which is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010).

Moreover, when the legal issue presented in connection with a motion to dismiss is one of statutory construction, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 679, 986 A.2d 290 (2010). Further, in construing statutes, we presume that, there is a purpose behind every sentence, clause or phrase used in an act, and that no part of a statute is superfluous. *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010).

I

We begin with the plaintiff's claim that § 52-190a (a) does not require a good faith opinion certification for a claim against an institutional defendant. The plaintiff asserts that there is a "gap" in the statute regarding institutional defendants. In support of her position, the plaintiff cites to the definition of "similar health care provider" in § 52-184c (c), and asserts that it contains attributes of health care providers that institutions cannot possess, such as board certification, and uses the pronoun "himself . . . ." In response, the defendants assert that there is no gap in the statute and that reading § 52-190a (a) in a manner that does not require a good

faith opinion certification in cases against institutional defendants would defeat the legislative purpose of § 52-190a (a). We agree with the defendants that § 52-190a (a) applies to claims against institutional defendants.

We begin with the language of § 52-190a (a), which provides in relevant part as follows: "No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

Section 52-190a (a) does not contain a definition of "health care provider." Section 52-190a (a) incorporates the definition of "similar health care provider," provided in § 52-184c, but § 52-184c does not contain a definition of "health care provider." Instead, § 52-184c (a) begins with the following phrase: "In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b . . . ." General Statutes § 52-184b (a), in turn, defines health care provider as follows: "For the purposes of this section, 'health care provider' means any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment." The definition of "health care provider" in § 52-184b (a) indicates that, by the use of the term "health care provider" in § 52-190a (a), the legislature intended to include institutions within its requirements.

In construing statutes, courts also are "guided by the principle that the legislature is always presumed to have

created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only [to] the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *In re Jusstice W.*, 308 Conn. 652, 663, 65 A.3d 487 (2012).

With this principle in mind, we turn to the definition of "health care provider" in other related statutes. General Statutes § 52-184d, which is concerned with the inadmissibility of an apology, also indicates that the legislature intended to include institutions when it chose the term "health care provider" for § 52-190a (a). Section 52-184d (a) (1) provides as follows: " 'Health care provider' means a provider, as defined in subsection (b) of section 20-7b, or an institution, as defined in section 19a-490, and includes a health care institution or facility operated by the state . . . ." This definition of "health care provider" supports the understanding that, by its use of the term "health care provider" in § 52-190a (a), the legislature intended to include claims of medical malpractice against institutional defendants within the good faith certificate requirements of § 52-190a (a).

The plaintiff asserts, however, that the fact that § 52-184c contains attributes of health care providers that institutions cannot possess, such as board certification, and uses the pronoun "himself" demonstrates that the legislature did not intend it to apply to institutional defendants. As this court recognized in *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 92–93, 828 A.2d 31 (2003), "§ 52-184c reveals that the statute consistently addresses two different types of health care providers. The first is the 'defendant health care provider,' that is, a health care provider against whom the plaintiff makes a claim of professional negligence. The second type is the 'similar health care provider.' A similar health care provider is identified as both the professional with reference to whom the applicable standard of care is established, as set forth in § 52-184c (a), (b) and (c), and as the expert who may testify as a witness, as set forth in § 52-184c (d). The definition of health care provider found in § 52-184b is incorporated into § 52-184c only in subsection (a) with reference to a defendant health care provider. There is no explicit incorporation of the definition in § 52-184b with reference to a similar health care provider anywhere in § 52-184c. This suggests to us that the legislature intended to incorporate the § 52-184b definition only with reference to defendant health care providers, and not with reference to similar health care providers." (Emphasis omitted.)

Although we agree with the plaintiff that the statute

is not as clear as it could be in regards to claims brought against institutions, the language cited by the plaintiff reflects the practical reality that medical malpractice can be committed only through the acts or omissions of people, specifically, medical professionals. Thus, when a medical malpractice action is brought against an institution, the malpractice necessarily is committed by the institution's officers, employees or agents. Accordingly, the "defendant health care provider" for purposes of § 52-184c is the person who allegedly committed the medical malpractice, not the person or institution that ultimately may be held liable for that malpractice. Indeed, such a focus conforms to the standard of care in a malpractice action, under which the applicable standard of care is that of the professional who committed the negligence, not the person or entity ultimately liable for that negligence, such as when an action is brought against a physician for the negligence of his employee, a nurse.[4]

Furthermore, we reject the interpretation of § 52-190a (a) urged by the plaintiff because it leads to absurd results. Specifically, the position urged by the plaintiff is that the requirement that a plaintiff submit a good faith opinion certification may be avoided by naming an institution as the defendant. It is axiomatic that "[w]e must interpret the statute so that it does not lead to absurd or unworkable results. See *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010) ('it is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results' . . .)." *State* v. *Drupals*, 306 Conn. 149, 165, 49 A.3d 962 (2012). The principal purpose of § 52-190a is to avoid frivolous actions against health care providers. It would frustrate the purpose of the statute to allow an action to proceed against a medical institution or facility in the absence of a good faith certificate and opinion letter. Further, the plaintiff's interpretation of § 52-190a (a), as it reads in conjunction with related statutes, would render the legislature's use of the terms "institution," "facility" or "corporation" superfluous. Accordingly, we conclude that the requirements of § 52-190a (a) apply to claims of medical malpractice brought against institutional defendants.

## II

Having concluded that § 52-190a (a) requires a good faith opinion certification from a similar health care provider in the present case, we next turn to the plaintiff's claim that the Appellate Court improperly concluded that her good faith opinion certification from a board certified obstetrician and gynecologist did not satisfy the requirements of § 52-184c. The plaintiff asserts that the Appellate Court improperly applied the requirements of § 52-184c (c) to her claim, whereas it should have applied § 52-184c (b) or § 52-184c (d) to

her claim, both of which were satisfied. In response, the defendants assert that the plaintiff was required to meet the requirements of § 52-184c (c) and the good faith opinion certification from a physician who is board certified in obstetrics and gynecology does not meet the requirements of § 52-184c (c) in the present case because the claims related to care given by certified nurse-midwives and a registered nurse. We agree with the defendants that § 52-184c (c) applies, but agree with the plaintiff that the good faith opinion certification in the present case satisfied the requirements of § 52-184c (c) and, in turn, § 52-190a.

As we explained previously in this opinion, § 52-190a (a) requires in relevant part that, "[t]o show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

First, we must address the threshold question of what subsection of § 52-184c; see footnote 3 of this opinion; applies in evaluating the good faith opinion certification in the present case. In *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 23, 12 A.3d 865 (2011), we concluded that § 52-184c (b) establishes "the qualifications of a similar health care provider when the defendant is neither board certified nor in some way a specialist, and § 52-184c (c) [establishes] those qualifications when the defendant is board certified, 'trained and experienced in a medical specialty, or holds himself out as a specialist . . . .' General Statutes § 52-184c (c)." In *Bennett* v. *New Milford Hospital, Inc.*, supra, 23–24, we relied on the allegation in the plaintiff's complaint "that the defendant 'specializes in the field of emergency medicine,' " to conclude that the good faith opinion certification had to be authored by a similar health care provider as defined by § 52-184c (c). Subsection (d) of § 52-184c, however, addresses whether a health care provider may testify as an expert in a medical malpractice action. In *Bennett* v. *New Milford Hospital, Inc.*, supra, 21, we further concluded that "in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)."

In the present case, the plaintiff alleged in her complaint that the defendants "specializ[e] in obstetrics . . . ." More significantly, it is undisputed that the certified nurse-midwives whose actions form the basis of the plaintiff's complaint held themselves out as specialists. Following our reasoning in *Bennett*, we conclude that

the good faith opinion certification had to be authored by a similar health care provider as defined by § 52-184c (c).

Having concluded that § 52-184c (c) applies to the present case, we must look at who constitutes a "similar health care provider" for purposes of § 52-184c (c). Section 52-184c (c) provides as follows: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'."

In the present case, the plaintiff brought claims of medical malpractice against Connecticut Childbirth and Women's Health, two institutional defendants, under a theory of vicarious liability, for the alleged actions of their employees. The employees whose actions are specifically named in the plaintiff's complaint are certified nurse-midwives and a registered nurse. The plaintiff's complaint asserts that she suffered injuries related to pregnancy, childbirth and postpartum care due to the negligence of the defendants and their "servants, agents, apparent agents and/or employees . . . ." The plaintiff alleged in her complaint that the defendants "specializ[e] in obstetrics . . . ." See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21.

The defendants assert, and the Appellate Court concluded, that, "the plain language of §§ 52-190a (a) and 52-184c (c) dictates that a 'similar health care provider' with respect to the plaintiff's health care providers would be one who is trained and experienced in [nurse-midwifery] or nursing and is certified in [nurse-midwifery] or nursing." *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 135 Conn. App. 687–88. The plaintiff counters that, even if § 52-184c (c) applies to her claim, in light of the purpose behind §§ 52-190a and 52-184c (c), the good faith opinion certification in the present case from an physician who is board certified in obstetrics and gynecology and who has trained and supervised nurse-midwives satisfies the requirements of the statute. We conclude that the text of the statute accommodates a circumstance in which two different types of medical professionals are board certified in the same medical specialty. To the extent that the statute is ambiguous as to this question, we agree with the plaintiff that a construction that deems a medical professional who is board certified in the same specialty but has greater training and experience, satisfies the purpose of the requirement of the opinion letter.

Under this construction, a board certified obstetrician and gynecologist is a similar health care provider for purposes of § 52-184c (c).

Our understanding of the terms of § 52-184c (c) are informed by the purpose of the opinion letter requirement in § 52-190a. In *Wilcox* v. *Schwartz*, 303 Conn. 630, 640–42, 37 A.3d 133 (2012), this court explained as follows: "§ 52-190a originally was enacted as part of the Tort Reform Act of 1986. See Public Acts 1986, No. 86-338, § 12. The original version of the statute required the plaintiff in any medical malpractice action to conduct a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff] and to file a certificate that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. General Statutes (Rev. to 1987) § 52-190a (a). The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence . . . but permitted the plaintiff to rely on such an opinion to support his good faith belief. . . . [T]he purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions. See *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 15, 698 A.2d 795 (1997) ([t]he purpose of the legislation is to inhibit a plaintiff from bringing an inadequately investigated cause of action, whether in tort or in contract, claiming negligence by a health care provider).

"In 2005, the legislature amended § 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to [show the existence of the claimant's good faith belief that grounds exist for an action by] obtain[ing] the written opinion of a similar health care provider that there appears to be evidence of medical negligence . . . . See Public Acts 2005, No. 05-275, § 2 . . . . *Dias* v. *Grady*, [292 Conn. 350, 357, 972 A.2d 715 (2009)]. The 2005 legislation was part of a comprehensive effort to control significant and continued increases in malpractice insurance premiums by reforming aspects of tort law, the insurance system and the public health regulatory system. *Bennett* v. *New Milford Hospital, Inc.*, [supra, 300 Conn. 18].

"As we also observed in *Dias* with regard to the legislative history of the 2005 legislation, Michael D. Neubert, an attorney representing the Connecticut State Medical Society at a hearing before the [J]udiciary [C]ommittee, stated that the [written opinion requirement] was intended to ensure that there's a reasonable basis for filing a medical malpractice action under the circumstances. It would help eliminate some of the more questionable and meritless claims filed under the present statutory scheme. Conn. Joint Standing Com-

mittee Hearings, [Judiciary, Pt. 18, 2005 Sess.], p. 5539. [Neubert] also stated that the [requirement obviously was not going to impact the majority of cases and] was targeting [only the cases on the margins] . . . where attorneys, based on their own judgment and maybe in good faith have misread what an [expert has] told them . . . . Very often you hear what you want to hear as an attorney, or interpret [what has] been told to you as you want to interpret it. . . . [I]f the [physician is] not willing to sign on the dotted line, maybe [that is] a good indication that this [is not] a good case to bring. . . . If part of what [we are] trying to do here is eliminate those cases [that] should not be in the system then I think this serves to do it. Id., p. 5553; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 19, 2005 Sess., p. 5743, written testimony of Neubert (the present statutory scheme does not adequately [e]nsure that an attorney filing a medical malpractice action has a reasonable basis to believe that the defendants have violated the standard of care in causing the plaintiff injury). *Dias* v. *Grady*, supra, 292 Conn. 358 n.7.

"Two legislators echoed Neubert's view that the written opinion requirement was intended primarily to reduce the number of frivolous medical malpractice actions by requiring a plaintiff to obtain an opinion from a similar health care provider substantiating the plaintiff's good faith belief that there had been negligence in the plaintiff's care and treatment. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5545, remarks of Senator John A. Kissel (stating that written opinion requirement would greatly improve on then current practice of [the plaintiff's] attorney just sort of signing off in good faith); see also 48 S. Proc., Pt. 14, 2005 Sess., p. 4433, remarks of Senator Edward Meyer (observing that written opinion requirement would deal with . . . [the] bad cases). Relying in large measure on Neubert's testimony, we concluded in *Dias* that the legislative history indicates that [the written opinion requirement] was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts. *Dias* v. *Grady*, supra, 292 Conn. 357–58." (Footnote omitted; internal quotation marks omitted.)

As the foregoing demonstrates, §§ 52-190a and 52-184c (c) were implemented to prevent frivolous medical malpractice actions by requiring a medical professional with expertise in the particular medical field involved in the claim to offer his or her professional opinion that the standard of care was breached in a particular instance. In the present case, the plaintiff submitted a good faith opinion certification from an obstetrician and gynecologist who certified that he has instructed and supervised certified nurse-midwives and is familiar with the standard of care applicable to them and that the plaintiff's claims fell within his realm of expertise

as a board certified obstetrician and gynecologist.

In the complaint, the plaintiff alleged that Connecticut Childbirth is "a professional corporation licensed to do business by the state of Connecticut comprised of physicians, [nurse-midwives], surgeons, nurses and other professional health care providers specializing in obstetrics . . . ." The plaintiff further alleged that Women's Health is "a professional corporation licensed to do business by the state of Connecticut comprised of physicians, [nurse-midwives], [and] other professional health care providers specializing in obstetrics . . . ." This court has previously determined that it is appropriate to look to the allegations of the plaintiff's complaint to frame the requirements for who constitutes a similar health care provider for purposes of the good faith opinion certification. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 23–24 ("[b]ecause the plaintiff brought this action against the defendant in his capacity as a specialist in emergency medicine, we conclude that § 52-190a [a] required the plaintiff to supply an opinion letter authored by a similar health care provider as defined by § 52-184c [c]"). Thus, the question is whether a board certified obstetrician and gynecologist and a certified nurse-midwife practice and are certified in the same medical specialty.[5]

Stedman's Medical Dictionary defines obstetrics as "[t]he specialty of medicine concerned with the care of women during pregnancy, parturition [while giving birth], and the puerperium [after birth]." Stedman's Medical Dictionary (28th Ed. 2006) p. 1354; see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "obstetrics" as "a branch of medical science that deals with birth and with its antecedents and sequels"). Stedman's Medical Dictionary defines a midwife as "[a] person qualified to practice midwifery, having received specialized training in obstetrics and child care." Stedman's Medical Dictionary, supra, p. 1212. That dictionary, in turn, defines midwifery as "[i]ndependent care of essentially normal, healthy women and infants by a midwife, prepartally, intrapartally, postpartally and/or obstetrically in a hospital, birth center, or home setting . . . ." Id. Similarly, the Dictionary of Modern Medicine indicates that the field of medicine relevant to a midwife is obstetrics and, in turn, defines a midwife as "[a] formally-trained person, usually a registered nurse, who assists in childbirth; midwifery is undergoing a renaissance, and provides obstetric services for lower income women, and is a delivery option chosen by some upper income women who desire a greater involvement in childbirth . . . ." Dictionary of Modern Medicine (J. Segen ed., 1992) p. 450.

It is also important to look at the statutory scheme governing nurse-midwives in Connecticut. The statutory scheme requires that a nurse-midwife work in con-

junction with a certified obstetrician and gynecologist. Specifically, General Statutes § 20-86b provides in relevant part as follows: "Nurse-midwives shall practice within a health care system and have clinical relationships with obstetrician-gynecologists that provide for consultation, collaborative management or referral, as indicated by the health status of the patient. . . ." General Statutes § 20-86a (1) also provides as follows: " 'Nurse-midwifery' means the management of women's health care needs, focusing particularly on family planning and gynecological needs of women, pregnancy, childbirth, the postpartum period and the care of newborns, *occurring within a health care team and in collaboration with qualified obstetrician-gynecologists*." (Emphasis added.) The statutory requirement that a nurse-midwife work in conjunction with an obstetrician and gynecologist, combined with the explicit representation in the good faith opinion certification that the obstetrician in the present case had experience supervising nurse-midwives, demonstrates that the obstetrician satisfied the requirements for a "similar health care provider" under § 52-184c (c). The defendants would have us impose a requirement in the statute that the opinion letter be authored by an identical "health care provider" and not a "similar health care provider." Such a definition would frustrate the wording of the statute. The statutory scheme requiring a nurse-midwife to have clinical relationships for consultation and collaboration with an obstetrician-gynecologist indicates that an obstetrician-gynecologist who has worked with nurse-midwives would be able to provide a medical opinion as to whether there is a good faith basis for believing that the standard of care for nurse-midwives was not followed.[6]

Furthermore, the defendants conceded at oral argument before this court that nurse-midwives practice obstetrics.[7] The defendants also were unable to identify any obstetrical procedure that a nurse-midwife is trained and board certified to perform that an obstetrician is not trained and board certified to perform. Instead, the defendants pointed to the fact that a physician is certified by the American Board of Obstetrics and Gynecology, whereas a nurse-midwife is certified by the American College of Nurse-Midwives and, more specifically, the American Midwifery Certification Board. In addition, the defendants pointed to the fact that an obstetrician can perform certain procedures that are beyond a nurse-midwife's scope of practice. See General Statutes § 20-86b (recognizing possible referral to obstetrician when care of patient is not within nurse-midwives' scope of practice). We are not persuaded that these considerations are relevant to determining whether an obstetrician is a similar health care provider to a certified nurse-midwife under § 52-184c (c). First, § 52-184c (c) simply provides that the similar health care provider must be "certified by the

appropriate American board in the same specialty . . . .” It does not provide that the author of the opinion letter must be certified by the same board as the defendant health care provider, but rather the same specialty. Both the American Midwifery Certification Board and the American Board of Obstetrics and Gynecology provide certification in the same specialty, obstetrics. Although it is possible that the legislature never considered whether two boards could provide certification in the same specialty, to construe the statute to permit such a result seems wholly consistent with the purpose of the opinion letter requirement. Second, although an obstetrician’s training in that specialty undoubtedly exceeds that of a certified nurse-midwife in terms of the type of procedures that may be performed and the type of patients that may be treated, there is nothing in the record that would indicate that the standard of care for the two professionals would differ substantively with respect to those matters that fall within the scope of both professionals’ certification. Accordingly, it is wholly consistent with statute’s purpose to allow an opinion letter to be provided from a medical professional whose qualifications in a specialty exceed those of the medical professional alleged to be negligent.[8]

Thus, the present case is wholly distinguishable from *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 17. In that case, the physician who was alleged to have been negligent and the author of the opinion letter were not certified in the same specialty. Id., 23–24. In the present case, the author of the opinion letter and the allegedly negligent medical professional were both board certified in the same specialty, obstetrics.[9]

On the basis of the foregoing, we conclude that the plaintiff fulfilled the requirements of §§ 52-184c (c) and 52-190a by submitting a good faith opinion certification from a board certified obstetrician and gynecologist.[10]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to deny the defendants’ motion to dismiss and for further proceedings according to law.

In this opinion PALMER, McDONALD and ESPINOSA, Js., concurred.

[1] As noted by the Appellate Court: “Kristin Wilkins’ husband, Billy Wilkins, filed a claim for loss of consortium. [That] claim is derivative of his wife’s malpractice claims, and, consequently, their claims on appeal are identical . . . .” *Wilkins* v. *Connecticut Childbirth & Women’s Center*, 135 Conn. App. 679, 680 n.1, 42 A.3d 521 (2012). For the sake of clarity, we hereafter refer in this opinion to Kristin Wilkins as the plaintiff.

[2] General Statutes § 52-190a provides: “(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment

of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

"(b) Upon petition to the clerk of the court where the civil action will be filed to recover damages from personal injury or wrongful death, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[3] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to

subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[4] It is important to note that § 52-190a applies only to claims of medical malpractice, not ordinary negligence. See, e.g., *Shortell* v. *Cavanagh*, 300 Conn. 383, 393, 15 A.3d 1042 (2011) ("If an expert is needed to establish the standard of care, a fortiori, an opinion letter is required from a similar health care provider. It is likewise both consistent and logical to hold that if an expert is not required to establish the medical standard of care, an opinion letter is not required under § 52-190a."); *Multari* v. *Yale New Haven Hospital, Inc.*, 145 Conn. App. 253, 259–61, 75 A.3d 733 (2013) (examining allegations in complaint to determine whether plaintiff alleged ordinary negligence, not subject to opinion letter requirement, or medical malpractice, subject to opinion letter requirement); *Nichols* v. *Milford Pediatric Group, P.C.*, 141 Conn. App. 707, 711–16, 64 A.3d 770 (2013) (same); *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 575–80, 966 A.2d 813 (2009) (same). Accordingly, not every claim against a medical institution necessarily is subject to the good faith opinion certification requirement.

In the present case, the plaintiff alleges: (a) negligent provision of medical care and treatment by medical personnel; and (b) negligent hiring/supervision and negligent failure to promulgate policies by the defendant institutions. There is no doubt that the former sounds in medical malpractice. The plaintiff has not claimed that her allegations of institutional negligence do not sound in medical malpractice and, therefore, are not subject to the opinion letter requirement. Accordingly, we need not consider whether, even if the opinion letter is insufficient as to the allegations based on vicarious liability, the plaintiff would be entitled to proceed on her allegations of institutional negligence.

[5] The dissenting justice states that "[t]he analysis under . . . § 52-184c (c) (2) expressly requires certif[ication] by *the* appropriate American board in the *same specialty* . . . ." (Emphasis in original; internal quotation marks omitted.) The dissenting justice further states "that the legislature's use of the article 'the,' rather than the more expansive 'an,' in modifying the phrase 'appropriate American board' demonstrates that the defendant and the opinion letter author must, in fact, be certified by the same board and, ergo, members of the same profession." We disagree. The legislature did not use the term "same board," rather it used the term "the appropriate American board . . . ." General Statutes § 52-184c (c). It could have easily used the term "same board" but chose not to do so. Indeed, it did use the term "same" when referring to "same specialty . . . ." General Statutes § 52-184c (c). Accordingly, we conclude that § 52-184c (c) does not require the similar health care provider to be certified by the same board as the health care provider who is alleged to have been negligent.

Moreover, we disagree with the dissent's conclusion that the similar health care provider and the health care provider who is alleged to have been negligent must be "members of the same profession." The term "profession" is not used anywhere in § 52-190a or § 52-184c. We refuse to add terms to the statutory language.

Accordingly, we reject the dissent's construction of § 52-184c (c) so as to require that the similar health care provider be licensed by the same board and be in the same profession as the health care provider who is alleged to have been negligent because such a construction alters the language of the statute.

[6] The dissent discounts the statutory scheme requiring nurse-midwives to "practice within a health care system and have clinical relationships with obstetrician-gynecologists that provide for consultation, collaborative management or referral . . . ." General Statutes § 20-86b. Instead, the dissent relies on the fact that the licensing and board certification requirements for nurse-midwives are separate and distinct from those required for obstetrician-gynecologists. We disagree. The fact remains that nurse-midwives cannot practice independently in Connecticut, but, are required to practice with a certified obstetrician-gynecologist. This legislative mandate supports our conclusion that the obstetrician-gynecologist who provided the good faith certificate in the present case was a similar health care provider.

[7] Indeed, that such a proposition is indisputable is reflected in case law. In *Ali* v. *Community Health Care Plan, Inc.*, 261 Conn. 143, 150, 801 A.2d

775 (2002), wherein a certified nurse-midwife had been found negligent, this court considered whether the trial court properly had instructed that jury that the standard of care to be applied in the case was that of a "reasonably prudent nurse-midwife *engaged in the practice of obstetrics and gynecology.*" (Emphasis altered.) Although this court's resolution of that question turned on the evidence presented in that case, it is instructive that the plaintiff's expert, a board certified obstetrician and gynecologist, testified that a certified nurse-midwife is a practitioner of obstetrics and gynecology. Id., 151. Apparently, the defendant in that case did not offer evidence to call this characterization into question. Thus, the issue in the case was not whether the certified nurse-midwife practiced in this field. Rather, it was whether, by stating the standard of care in relation to a "reasonably prudent nurse-midwife," rather than a "reasonably prudent professional," the trial court instructed the jury that it was to hold the certified nurse-midwife to a lower standard than other practitioners engaged in the field of obstetrics and gynecology. Id., 149–50; see also *Robbins* v. *Physician for Women's Health*, *LLC*, Superior Court, judicial district of New London, Docket No. 5002633 (October 16, 2007) (44 Conn. L. Rptr. 315, 316–17) (The defendant, a certified nurse-midwife "is trained and experienced in the same specialty as the opinion writer in this case, an obstetrician-gynecologist. Both are trained and experienced in providing prenatal care for pregnant women and providing assistance/medical care to women during childbirth. Furthermore, both are certified in the same specialty of providing medical care to women prior, during, and after childbirth. Lastly, the court is persuaded by the opinion writer's assertion that he/she has 'supervised midwives' and that he/she is 'informed about the level of obstetric care they are expected to furnish.' ").

[8] The defendants seem to suggest that reading the statutes so as to allow an obstetrician and gynecologist to provide a good faith certificate for a claim of medical malpractice involving a certified nurse-midwife would lead to an absurd result because a certified nurse-midwife could then provide a good faith certificate for a claim of medical malpractice involving an obstetrician and gynecologist. As we explained in this opinion, the statutory scheme in Connecticut requires a nurse-midwife to be supervised by and practice in conjunction with an obstetrician and gynecologist, there is no statute requiring that an obstetrician and gynecologist work in conjunction with a nurse-midwife. Accordingly, there may be a basis to distinguish between these two professionals for purposes of the opinion letter, at least insofar as those patients and procedures for which an obstetrician is required. In the present case, however, we need not decide whether a nurse-midwife would be able to opine as to the appropriate standard of care for an obstetrician and gynecologist.

[9] The dissent also relies on *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 17, to argue that, while an obstetrician-gynecologist may be able to testify in a case of this nature, he or she could not provide the good faith certification. *Bennett* is simply not applicable to this case because it involved a good faith certification authored by a general surgeon that related to the alleged malpractice of a physician whom the plaintiff had alleged was a specialist in emergency medicine. The dissent appears to agree with us that the specialty at issue in the present case is obstetrics, and that obstetrician-gynecologists and nurse-midwives both have the same specialty—obstetrics. Therefore, the discussion in *Bennett* regarding whether two health care providers practice in the same specialty is not applicable to the present case.

Moreover, as this court has recognized many times, the purpose of § 52-190a was to prevent frivolous malpractice actions. See, e.g., id., 12. It was not intended to serve as a sword to defeat otherwise facially meritorious claims.

[10] The fact that the plaintiff's complaint leaves open the possibility of negligence of other employees of the defendants or specifically alleges negligence on the basis of the institution's failure to promulgate policies and procedures is not relevant to our present analysis. The plaintiff need not address every allegation of negligence in the opinion letter. Under § 52-190a (a), the attorney or claimant must obtain a written and signed opinion of a similar health care provider as defined in § 52-184c to show the existence of a good faith belief that there has been negligence in the treatment of the claimant. Section 52-190a (a) does not specify that the attorney or claimant must obtain a good faith opinion certification regarding every defendant. Therefore, a good faith opinion certification of someone who qualifies as a similar health care provider for purposes of any of the defendants satisfies the requirements of § 52-190a (a).